**LAWLESS v. ELLIS et al.　(No. 7509.)**

(Court of Civil Appeals of Texas. San Antonio. Feb. 24, 1926. Rehearing Denied March 17, 1926.)

1. **Appeal and error** ☞994(3), 1001(1)—**Jury verdict in libel suit will not be disturbed, where evidence is sufficient to support findings; jury being exclusive judges as to weight of evidence and credibility of witnesses.**

Verdict of jury in libel suit will not be disturbed, where there is evidence sufficient to support findings; jurors being exclusive judges as to weight to be given evidence and credibility of witnesses.

2. **New trial** ☞99—**Refusal to grant new trial held proper, where alleged newly discovered evidence probably would not have changed result and could have been earlier discovered by diligence.**

In action for libel and slander, imputing unchastity to plaintiff's wife, refusal to grant plaintiff new trial for newly discovered evidence, showing that witness who testified to seeing plaintiff's wife engaged in unlawful act was elsewhere at time, *held* not an abuse of discretion, where it probably would not have changed result, as testimony by witness showed immoral acts of plaintiff's wife at other times and places, and plaintiff, by exercise of diligence, could have produced newly discovered evidence at trial.

3. **Libel and slander** ☞45(3)—**Letters and utterances by deacons of church to governing offices of church and to its pastor, imputing unchastity to pastor's wife, held qualifiedly privileged, precluding recovery for libel and slander, without showing of malice.**

Letters and utterances by deacons of church to pastor and to governing offices of church invested with authority over it, imputing unchastity to pastor's wife, *held* qualifiedly privileged and, in absence of showing of malice, pastor cannot recover for libel and slander.

4. **Appeal and error** ☞1050(1)—**Evidence** ☞222(2)—**Allowance in evidence of admission of unchastity by plaintiff's wife, charged with unchastity in alleged libel, held not error, but, if error, it was harmless.**

In suit for libel, based on written statement charging plaintiff's wife with unchastity, it was not error to permit admission by wife, tending to prove her unchastity, to go to jury, and, if error, it was harmless.

5. **Appeal and error** ☞1040(3)—**Libel and slander** ☞80—**Ruling, sustaining exception to pleadings in suit for slander on ground of vagueness, held not error, but, if error, it was harmless, where plaintiff was permitted to introduce all material evidence.**

Ruling, sustaining exception to pleadings for failure to state time, place, or manner of alleged slander, *held* not error, but, if error, it was harmless, where plaintiff was permitted to introduce all material evidence in case.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by W. E. Lawless against Edward Ellis and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. C. Scott, of Corpus Christi, for appellant.
B. D. Tarlton and Byron Martin, both of Corpus Christi, for appellees.

COBBS, J. Appellant, for himself and wife, sued appellees for damages growing out of an alleged slander and libelous letter, as follows:

"No. 911 Carrizo St., Corpus Christi, Texas,
"10/12/24.

"Dr. Alfred Lawless, Gen. Sup., No. 45 and Half, Auburn St., Atlanta, Ga.—Dear Bro. Lawless: This comes to advise you of a certain happening here that has thrown a scandal upon the church and caused no end of confusion. On Sunday evening, September 28th, after the second service of the day, which was after 4:30 P. M. at which services we had a visiting Bro. from the San Antonio field conducting a series of meeting and closing up a rally. After this afternoon service, our local Pastor's wife left the Parsonage in their car with her two children and a woman friend of her's, a member of the Church, she drove to the home of this friend, and left her there, and also her children with this friend, she then proceeded to the country, taking a road not travelled much by the public. She had been suspected by a woman of being intimate with her husband, so this woman followed her this after-noon, after seeing her Husband drive to the country ahead of the Pastor's wife. She followed them almost as far as the city limits and then decided to wait there their return. The Pastor's wife came back, taking a road not travelled much in her car, and in a little while the woman's husband came back in their car, this woman gets into her car with her husband takes the wheel and drives to the place where Mrs. Lawless had left her children with her friend, just in time to catch her before she could get her children and drive away. When she saw this woman she began to say, 'Oh, Mrs. Pettus I have not been with your husband, I have not seen your husband. Mrs. Pettus climbed into Mrs. Lawless's car and began to beat her in the face of the public, being witnessed by many passers-by. Mrs. Pettus then came to town and began to spread the news, and it reached the ears of some of the Deacons and members of the Trustee Board, before the evening service had begun. At the meeting of the Trustee Board Monday night following, which was their monthly meeting, the Pastor seemed in such a good spirit that members of the Board said among themselves, that 'surely he does not know anything of this happening.' Our Pastor left Tuesday to take the visiting Pastor to his field. The Deacons & Trustee were assembled in a special meeting, and the rumor unfolded to them, it was first agreed by them to immediately ask for the Pastor's resignation. The majority taking the position, that when a thing of this kind happens, that the easiest way out is the best, that the more you air a thing of this kind the harder it is for the Church, and harder for the next man that takes the field. The Board finally agreed that as soon as the Pastor re-

turned to the City; that they would call him to meet with them and would tell him of the rumor, and find out his position in the matter. Upon hearing of his return to the city, the senior Deacon went to the Parsonage and informed him that the Board wished a meeting with him, he immediately said that 'I know what you want and will under no condition meet the Board.' The annual business of the Church, which had previously been set for Wednesday night, was re-announced Sunday night Oct. 5th, by the Pastor. In announcing this meeting he said that he was going to get a clean board if he had to put on it Chinamen. This of course was spoke in no other spirit than a vindictive spirit. At this meeting he submitted names to the Church, to replace the men who had given him unlimited cooperation sience he had been here, both in the construction of the Church and the Local Duties. At this meeting, the Majority of the Church resented this action of the Pastor and refused to elect Officers, saying that the Church should clean itself, as there was too much of a stir among its members. The meeting broke up in confusion and nothing was done. The Deacons and Majority of the Trustee Board are asking for the Church that a investigator be sent at a most earliest possible date, for the obligations that this Church has to meet with its Local Construction notes and operating expenses can't get anywhere with this strife existing.

"A copy of this letter has been sent to the President of the American Missionary Association, New York, Rev. H. H. Dunn, New Orleans, and a copy is kept here. Trusting that you will give this matter your earliest consideration, we beg to remain yours for Christ and the Advancement of his Cause. [Signed] Edward Ellis, Senior Deacon & Member of Trustee Board. [Signed] H. B. Davis, Sr., Junior Deacon, Secretary of Trustee Board. & Church Treasurer. [Signed] E. D. Kinlock, Member of Trustee Board."

The petition also sets out the slanderous nature of the letter and its innuendoes charging malice. The answer was sufficiently responsive and defensive, and no question was presented as to its sufficiency. Defendants also plead, among other things, that the facts charged by innuendo as slander were the truth, although they never expressed any statement, either verbal or written, expressly or by fair import, charging a want of chastity to the plaintiff's wife.

The case was tried with a jury and the court submitted special issues to the jury, which were answered in favor of appellees. And on the findings of the jury the court entered judgment in favor of appellees that appellant take nothing by the suit.

[1] There is no merit in the first proposition that the great preponderance of evidence is against the verdict. If that were so, still there is evidence in this case sufficient to support the jury's finding, and the verdict will not be disturbed. They were the exclusive judges as to the weight to be given to the evidence and as to the credibility of the witnesses. It is not for the court to say to the jury which witness they should believe and which one they should not believe.

[2] We do not think there is any merit in the proposition or contention that the court erred in not granting a new trial on the ground of newly discovered evidence. The proposed newly discovered testimony is sought by the two named witnesses to contradict and impeach the witness Ed Grant, who testified on the trial as to the main fact that he saw Ed Pettus and Geneva R. Lawless, the wife of the pastor, W. E. Lawless, engaged in the unlawful act itself, the flagrante delicto. It was sought to contradict this testimony by showing Ed Grant did not see them outside the city limits, or elsewhere, on the afternoon of September 28, 1924, or at any time, because Ed Grant was in Corpus Christi from about 3:30 p. m. to 6:30 p. m., and during that time on Winnebago street, with Hugh Carpenter and Dave Pruitt, and was trying to induce them to vote for a certain candidate for election to the office of mayor of Corpus Christi at the next city election, and that during that period was not at any time away from that locality. There was ample testimony to show that Pettus had sexual intercourse with her at other times and places besides this one.

If, under the circumstances in this case, such testimony had any merit, it should have been known to Ed Grant, whose testimony was challenged, and by any kind of diligence could have been ascertained by appellant in time to produce the witness on the trial of this case before its termination. If that testimony had been introduced in the trial, we doubt that it would have changed the result, because there was other testimony by Grant to the same effect. This motion was presented to and considered by the trial court, and we cannot see wherein he has in the least abused his discretion in refusing the motion. Peters v. Williams (Tex. Civ. App.) 271 S. W. 430.

There was sufficient, or rather more than sufficient, testimony to support the finding of fact by the jury that the slander uttered against the parson's wife was true, and that leads to an affirmance of this case, unless there has been some error committed in the trial.

[3] The utterances complained of are privileged communications, or at least qualifiedly so, and there is no evidence to show malice, without which there could be no recovery. The letter was written to the governing offices of the church, who were invested with authority over the church. The general secretary of the church, with headquarters in New York City, the superintendent in Atlanta, and the superintendent of the church work in Texas. It was established that the general superintendent was a brother of the local preacher, appellant, and that the superintendent in Texas was a brother-in-law of the general superintendent. Foley

Bros. Dry Goods Co. v. McClain (Tex. Civ. App.) 231 S. W. 459.

[4] This suit is based upon alleged grounds of a written statement charging unchastity. In such a case it is not error for the court to permit an admission of the woman herself tending to prove unchastity to go to the jury. It was harmless.

[5] There was no error in the ruling of the court to sustain an exception to the pleading in failing to state the time, the place, or the manner of the alleged slander on the ground of vagueness, being indefinite and uncertain, being conclusions of the pleader. If error, it was harmless, because appellant was permitted to introduce all the material evidence in the case anyway.

There was no error committed by the court in permitting Beula Pettus to relate a conversation she had with Geneva Lawless, in which the latter told her of her improper relation with a doctor in Beaumont. She had by her pleadings put her character for being a good and virtuous woman in issue. Appellee was meeting that material issue by attempting to show to the contrary. If error, it was a harmless one in view of all the testimony, and should not cause a reversal of this case.

We have considered and passed upon all the assignments and propositions, and find them without merit, and overrule them.

The judgment of the trial court is affirmed.